19IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| BARBARA BUCKHANON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cv-893-ALB |
| ) | |
| OPELIKA HOUSING AUTHORITY, ) | |
| and ) | |
| MATTHEW McCLAMMEY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on Defendant Opelika Housing Authority's Motion to Dismiss, (Doc. 6), Defendant Matthew McClammey's Motion to Dismiss, (Doc. 9), and Plaintiff Barbara Buckhanon's Motion for Leave to File Amended Complaint, (Doc. 17). Upon consideration, the Housing Authority and McClammey's Motions to Dismiss are GRANTED and Buckhanon's Motion for Leave to Amend is DENIED.

## BACKGROUND

This case is about alleged color-discrimination in the Opelika Housing Authority. The following facts are taken from the operative complaint and are assumed to be true for the purposes of this opinion.

Barbara Buckhanon worked as an at-will employee at the Opelika Housing Authority until her termination on October 24, 2019. Her direct supervisor was Julia Dowell, who in turn reported to the Executive Director, Matthew McClammey. (Doc. 1 ¶¶ 17–22). During her eighteen years at the Housing Authority, Buckhanon received consistently positive job evaluations and no write-ups or disciplinary actions. (Doc. 1 ¶¶ 12–13).

Buckhanon alleges that McClammey terminated her because of favoritism and color-based discrimination. (Doc. 1 ¶ 27). Buckhanon states that she is a dark-skinned African American woman, Dowell is a light-skinned African American woman, and McClammey is a light-skinned African American man. According to Buckhanon, in 2018 McClammey terminated two other "darker-skinned" Housing Authority employees. She also alleges that McClammey knows about, but has failed to act on, allegations of corrupt behavior within the Housing Authority. (Doc. 1 ¶ 24–26).

Buckhanon sued McClammey and the Housing Authority in her initial complaint. She brings six counts. She sued the Housing Authority for Color-based Discrimination under Title VII (Count I), Retaliation under § 1983 (Count II), Failure to Train and Supervise under § 1983 (Count III), Deprivation of Due Process under § 1983 (Count IV), and FLSA Overtime Pay Violations under 29 U.S.C. § 201 (Count VI). She also sued McClammey for Retaliation under § 1983 (Count V).

The Housing Authority filed a partial motion to dismiss the failure to train and retaliation claims (Counts II and III). McClammey filed a motion to dismiss the retaliation claim (Count V), which was the only claim against him.

In part of her response to these motions, Buckhanon sought to amend the complaint to add: (1) an additional count against McClammey for violating her due process rights by terminating her without process and (2) an allegation that Buckhanon was granted unemployment compensation benefits. (Doc. 17-1).

Defendants responded that the proposed amendments were futile.

## DISCUSSION

The motions to dismiss are due to be granted and the motion to amend is due to be denied. When evaluating a motion to dismiss, the court assumes the factual allegations are true and construes them in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). "To avoid dismissal the complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). Whether a complaint is plausible depends on whether "it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**A. Buckhanon's Failure to Train and Supervise Allegations Are Conclusory**

Buckhanon argues that the Housing Authority should be responsible for failing to train and supervise McClammey under § 1983. Defendants counter that Buckhanon's allegations are insufficient to state a claim because the Complaint does not allege that McClammey acted pursuant to government policy or had his action ratified by the Housing Authority. The Court agrees with Defendants.

To hold a municipality liable under § 1983, a plaintiff must show that adverse action was taken "pursuant to official municipal policy," *i.e.*, decisions by a lawmaker, actions by a policymaking official, or a "persistent and widespread" practice. *Connick v. Thompson*, 563 U.S. 51, 60–62 (2011). In limited circumstances, a failure to train can be considered a city policy actionable under § 1983. *Id.* at 61 ("A municipality's culpability … is at its most tenuous where a claim turns on a failure to train."). But the city's failure to train must be a result of "deliberate indifference," such that policymakers are on actual or constructive notice that training omissions are causing city employees to violate constitutional rights. *Id.*

Here, Buckhanon has not met the stringent standard for alleging municipal liability for a failure to train. At most, Buckhanon alleges that she notified the Housing Authority of McClammey's actions in terminating her. While Buckhanon does allege a pattern of similar constitutional violations by McClammey in engaging in color-based terminations, Buckhanon has not alleged that the Housing Authority

knew of these other terminations. Thus, she has not pleaded deliberate indifference on the part of the policymakers. Further, Buckhanon alleges that McClammey actually violated the Housing Authority's graduated discipline policies. (Doc. 1 ¶ 51). Under these facts, the Housing Authority cannot be held liable for McClammey's alleged decision to ignore established policies.

Failure to train can also be established under a ratification theory, where "a local government [is] held liable for a constitutional tort when policymakers have had the opportunity to review subordinates' decisions before they become final." *Thomas v. Roberts,* 261 F. 3d 1160, 1174 (11th Cir. 2001) (citing *City of St. Louis v. Praprotnick*, 485 U.S. 112, 127 (1988)), *vacated on other grounds by,* 536 U.S. 953 (2002), *reinstated by* 323 F.3d 950 (11th Cir. 2003). Ratification is a "formal confirmation or sanction"; the final step in formalizing an action. *Ratification*, Merriam-Webster (last accessed April 7, 2020). Absent ratification, the action would be incomplete. *See Ratification*, Merriam-Webster (examples showing ratification is necessary to complete action: "ratification of the 13th Amendment formally abolished slavery," "treaty would require two-thirds approval in the Senate for ratification"); *Ratification*, Corpus of Contemporary American English (last

accessed April 2, 2020) (providing additional contextual examples of ratification showing ratification is necessary to complete some actions).[1]

Buckhanon's basis for alleging ratification, however, is that the Housing Authority ignored her post-termination message regarding McClammey's conduct—which she sent *after* her termination was finalized. For a successful failure to train claim under a ratification theory, an unratified decision by a public official should be of no effect, like an unratified constitution or treaty. But that is not the case with Buckhanon's termination, which became final without the Housing Authority's approval. Her attempts to shoehorn a municipality's post-hoc review into a retaliation claim is foreclosed by this Circuit's precedents. The Housing Authority cannot be held liable under a retaliation theory, and this Count is due to be dismissed.

## B. Buckhanon's Retaliation Claims Lack Causation

Buckhanon argues that McClammey and the Housing Authority retaliated against her for filing an EEOC complaint by moving her to a less-desirable office,

---

[1] The Court searched the Corpus of Contemporary American English (COCA) for "ratification," which returned approximately 2000 results. Of these results, the Court reviewed a randomized sample of 200. A survey of the results confirms that ratification most frequently occurs in modern, everyday speech in the political context of ratifying a treaty or when speaking of ratifying the Constitution or one of its Amendments. ("The United States Senate gave its advice and consent to the ratification of the treaty," "before ratification of the Fourteenth Amendment and passage of the Civil Rights Bill"). This usage has ancient roots, (victims sacrificed in ratification of a covenant or treaty in Homer's Iliad), which have continued in modernity. ("Maddy must have taken our cohabitation for some ratification of a general O.K.ness—why else would I live with him?").

taking her work vehicle and phone, and terminating her, all of which occurred shortly after the EEOC closed her file on August 19. McClammey and the Housing Authority counter that the EEOC's closure date is irrelevant to determining whether these actions were retaliation for Buckhanon's EEOC Charge filed on February 13. And absent a tight temporal nexus, they argue, Buckhanon's retaliation claim must fail.

To make a prima facie case of retaliation, a plaintiff must show (1) she engaged in a Title VII-protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the activity and the action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (per curiam). Filing an EEOC Charge is protected by Title VII, but it would be "utterly implausible" to suggest that the EEOC's issuance of its letter is protected activity. *Clark Cty Sch. Dist.* v. *Breeden*, 532 U.S. 268, 273 (2001). Causation can be established with "mere temporal proximity," but that proximity must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (three to four months insufficient to support retaliation claim). Here, Buckhanon's protected conduct was filing the EEOC Charge in February. The alleged retaliation did not occur until almost seven months later. This extensive gap far exceeds the "very close" proximity necessary in this Circuit to support a retaliation claim. Buckhanon's retaliation claims against the Housing Authority and McClammey are due to be dismissed.

## C. Buckhanon's Due Process Claim Fails to State a Claim and the Proposed Amendment Would be Futile

Buckhanon requests leave to add a Due Process Claim under § 1983 against McClammey, which mirrors the Due Process Claim her initial complaint brings against the Housing Authority.[2] As for the § 1983 claim against McClammey, Buckhanon alleges that he deprived her of due process by summarily firing her and failing to respond to a letter about her termination. (Doc. 17-1 at 2). These are the same allegations her initial complaint makes against the Housing Authority. (Doc. 1 ¶¶54–56).

The Court will freely grant leave to amend unless the proposed amendment would be futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004); *see* Fed. R. Civ. P. 15(a)(2). A proposed amendment is futile if the complaint as amended would still be subject to dismissal. *Id.* at 1263 (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

Here, in both her initial complaint and her attempted amendment, Buckhannon fails to allege a viable due process claim based on her termination against the Housing Authority or McClammey. Neither Buckhanon's initial

---

[2] Buckhannon also requests leave to allege that the Alabama Department of Labor granted her unemployment benefits, which would be denied had she been terminated for "good cause" or "misconduct." (Doc. 17-1 at 2–3). These facts might be relevant to the other counts in the Complaint, but they do not save her retaliation, due process, or failure to train claims. Because the Court is giving Buckhannon leave to amend in response to this order, she may include these additional factual allegations in any new amended complaint.

complaint nor her proposed amendment states any plausible fact that would give her a due process right to continued employment. Instead, it is black letter law that at-will employees do not have a constitutionally protected property interest in their employment that can form the basis of a due process claim. *Warren v. Crawford*, 927 F.2d 559, 562–64 (11th Cir. 1991). For this reason, the due process claim against the Housing Authority (Count IV) is due to be dismissed and the motion to add such a claim against McClammey is due to be denied.

## CONCLUSION

Based on the foregoing, the Court orders as follows:

1. The Housing Authority and McClammey's Motions to Dismiss, (Docs. 6, 9), are GRANTED.

2. Buckhanon's Motion for Leave to Amend, (Doc. 17), is DENIED.

3. Counts II, III, IV, and V of the Complaint are DISMISSED.

4. Plaintiff is granted until May 1, 2020 to move to amend the complaint in response to this order. Plaintiff's motion to amend, if filed, will be stricken if it does not comply with this Court's local rule requiring the entire complaint to be reproduced as an attachment to the motion. Any further dismissals will be without leave to amend.

5. This case is not closed.

**DONE** and **ORDERED** this day, April 14, 2020.

                                      /s/ Andrew L. Brasher
                              ANDREW L. BRASHER
                              UNITED STATES DISTRICT JUDGE